IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| VERNARD DIONNE ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>OAHU COMMUNITY CORRECTIONAL CENTER, D. PILI, *et al.*,<br><br>Defendants. | Case No. 18-cv-00260-DKW-RT<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Defendant Darrell Pili (Pili or Defendant) moves for summary judgment on Plaintiff Vernard Dionne Anderson's (Anderson or Plaintiff) sole remaining claim of excessive force in violation of the Eighth Amendment. Defendant moves on the ground that Plaintiff has failed to exhaust his administrative remedies related to the above-mentioned claim. However, because the evidence reflects that no further administrative remedies were available to Plaintiff, Defendant's motion for summary judgment is denied.

## FACTUAL BACKGROUND

The Court gleans the relevant factual background with respect to the issue presented–exhaustion or the lack thereof–from the parties' concise statements of fact and evidence filed in connection therewith.

An Inmate Grievance Program exists for inmates incarcerated at correctional facilities operated by the Department of Public Safety of the State of Hawaiʻi ("the DPS"). DPS Corr. Admin. Policy & Procedures, Policy No. COR. 12.03 § 4.0.1 (eff. July 1, 2015), Dkt. No. 40-2. The purpose of the Inmate Grievance Program, or "IGP," is to allow an inmate a process to address complaints relating to any aspect of the inmate's conditions of confinement. *Id*. § 1.0. Monetary compensation, however, is not an appropriate resolution for an inmate grievance. *Id*. § 11.0.

Under the IGP, the first level of review of an inmate grievance is to a "Section Supervisor, the next level for appeal is the Warden/Branch/Core Program Administrator and the final review level is the Division Administrator (DA)." *Id*. § 8.0.3(d). In other words, the IGP ordinarily consists of a three-step process. In submitting a grievance, an inmate must, *inter alia*, obtain "Form PSD 8215" and legibly complete the same, which includes clearly stating the complaint. *Id*. § 8.0.3.

The grievance file for Anderson contains the following documents related to events involving Pili.[1] First, a "Notice of Report of Misconduct and Hearing,"

---

[1] Because Anderson does not appear to challenge, in any manner, the documents contained in his grievance file related to events involving Pili, the Court assumes that Anderson's grievance file

2

dated March 21, 2018 ("Misconduct Report").  Dkt. No. 40-3 at 1.  Second, a "Form PSD 8215," with Control No. 413085, dated April 2, 2018 ("Grievance 413085").  *Id*. at 2.  Third, a hand-written note that appears to be signed by Anderson dated April 2, 2018.  *Id*. at 3.  Fourth, a "Form PSD 8215," with Control No. 413512, dated May 13, 2018, containing a resolution dated May 17, 2018 ("Grievance 413512").  *Id*. at 4.  Fifth (and last), a "Confidential – Return Notice," referencing Grievance 413512, dated May 17, 2018 ("Return Notice").  *Id*. at 5.  On the Return Notice, boxes are marked indicating that the "subject" of Grievance 413512 is not allowed by policy and "[m]onetary compensation is not an option for resolution."  *Id*.  Both of the foregoing marked boxes can be found under a heading reading that: "The following rejections for non-compliance to policy may not be appealed."  *Id*.

## PROCEDURAL BACKGROUND

On July 5, 2018, Anderson filed a Complaint against Pili, the Oahu Community Correctional Center (OCCC), and OCCC's "Warden-Chief of Security," alleging violations of his civil rights while incarcerated.  Dkt. No. 1.  After Anderson was granted leave to proceed *in forma pauperis*, Dkt. No. 3, this

---

contains only the documents that Pili contends the file contains and which are attached to Pili's concise statement of facts as Exhibit B (*i.e.*, Dkt. No. 40-3).

Court dismissed the Complaint in part with leave to amend, Dkt. No. 4. Specifically, the Court dismissed with prejudice all claims against OCCC and the defendants in their official capacities. The Court dismissed without prejudice and with leave to amend any due process claim against the Warden-Chief of Security. The Court allowed to proceed a claim against Pili for excessive force in violation of the Eighth Amendment. *Id*. Thereafter, Anderson filed a document stating that he wished to proceed only with his claim against Pili. Dkt. No. 6.

On January 30, 2019, Pili moved for summary judgment on Anderson's excessive force claim. Dkt. No. 39. At the same time, Pili filed a concise statement of facts. Dkt. No. 40. In his opening memorandum, Pili argues that he is entitled to summary judgment on the ground that Anderson failed to exhaust his administrative remedies with respect to the excessive force claim. *See generally* Dkt. No. 39-1. More specifically, Pili argues that Anderson's grievance file does not contain a third-step grievance regarding the excessive force claim, and thus, Anderson failed to exhaust DPS' three-step IGP. *Id*. at 4-6.

On May 28, 2019, Anderson filed a "Declaration in Opposition to Defendant's Motion for Summary Judgment," Dkt. No. 51, which the Court construes as Anderson's response in opposition to the motion for summary

judgment and Defendant's concise statement of facts. On June 17, 2019, Pili filed a reply in support of the motion for summary judgment. Dkt. No. 52.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the moving party bears the burden of proof, he "must come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). This means, therefore, that the moving party "bears the initial burden of establishing the absence of a genuine issue of fact on each issue material to his affirmative defense." *Id*. at 1537. In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## EXHAUSTION PRINCIPLES

The Prison Litigation Reform Act (PLRA) requires incarcerated prisoners bringing an action challenging prison conditions to exhaust "such administrative remedies as are available…." 42 U.S.C. § 1997e(a). An inmate must exhaust only available administrative remedies. *Ross v. Blake*, 136 S.Ct. 1850, 1858.

An administrative remedy is "available" for purposes of the PLRA when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

A prisoner's failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Ordinarily, a motion for summary judgment is the proper procedural device for a defendant to raise the affirmative defense of non-exhaustion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). In so moving, "the ultimate burden of proof remains with the defendant." *Id*. at 1172. Initially, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id*. To the extent the defendant satisfies that burden, "the burden [of production] shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*.

## **DISCUSSION**

In his opening memorandum, Pili argues that Anderson failed to exhaust his administrative remedies because his grievance file does not contain a third-step grievance regarding the claim of excessive force in this case. For the reasons set forth below, the Court disagrees that the evidence shows an unexhausted claim.

Instead, the evidence shows that, after Grievance 413512 was addressed by prison officials, Anderson had no further administrative remedies to pursue.

The Court starts with the grievance file. The evidence reflects that, in pertinent part, the file contains (1) the Misconduct Report, (2) Grievance 413085, and (3) Grievance 413512, which is accompanied by the Return Notice.[2] In his opening memorandum, Pili argues that the Misconduct Report does not constitute a grievance, and thus, Grievance 413085 and Grievance 413512, respectively, constitute Anderson's first-step and second-step grievances. Dkt. No. 39-1 at 5-6. Pili argues that, without a third-step grievance, Anderson cannot have exhausted his remedies under the IGP. *Id*. at 6.

However, even if the Court was willing to accept the foregoing construction of the grievance file, the Return Notice reflects that administrative remedies were no longer available to Anderson after Grievance 413512.[3] The Return Notice

---

[2]As mentioned, the evidence also reflects that the grievance file contains a hand-written note from Anderson. *See* Dkt. No. 40-3 at 3. Given that the note is dated April 2, 2018, the same date as Grievance 413085, and references adding to a grievance, the Court construes the note as part of Grievance 413085, rather than any standalone or independent document.

[3]The Court notes that, applying a proper summary-judgment standard, the Court need not accept Pili's construction of, at least, the Misconduct Report. In his declaration, Anderson asserts that a prison official told him that appealing a decision of the adjustment committee, like the decision evidenced in the Misconduct Report, automatically constitutes a step-two grievance. *See* Dkt. No. 51 at 2. In reply, Pili does not address this contention from Anderson. Thus, assuming the truth of Anderson's statement, Grievance 413085 would constitute a second-step grievance, rather than a first-step grievance as Pili argues.

clearly provided that, for various reasons, the rejection of Grievance 413512 could *not be appealed*. One of those reasons, citing Section 11 of the IGP, is because "[t]he subject of your grievance is not allowed by policy." Dkt. No. 40-3 at 5. This reason was checked in the Return Notice as applying to Grievance 413512. *Id*. Read naturally, therefore, the Return Notice informed Anderson that the *subject* of Grievance 413512 was not allowed by policy. In other words, the subject of Grievance 413512 was not grievable. The subject of Grievance 413512 is the events involving Pili. Why the Return Notice indicated that the subject of Grievance 413512 was not allowed by policy is unclear, as the subject of Grievance 413512 was evidently allowed by the IGP through the first-step. *See* Grievance 413085; IGP §§ 1.0, 4.0.2.[4] In any event, the Return Notice states what it states.

"[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005). Here, while Anderson did not receive a remedy at any level of review, the Court finds that he was reliably

---

[4]In fact, this is the basis of the motion for summary judgment: Anderson was required to exhaust the IGP because it applied to his allegations. *See* Dkt. No. 39-1 at 5-6.

informed via the Return Notice that no remedies were available to him because the subject of his grievance was not allowed by policy. Put another way, a remedy cannot be available for a grievance that is purportedly not allowed, that can no longer be appealed, and for which no remedy has been provided. This is precisely what the Return Notice informed Anderson.[5] Therefore, based upon the record before the Court, the Court finds that Pili has failed to meet his initial burden of showing that Anderson did not exhaust the available administrative remedies. *See id*.[6] As a result, the motion for summary judgment is denied.

---

[5]The Court notes that the Return Notice also provided that the rejection of Anderson's grievance was not appealable because "[m]onetary compensation is not an option for resolution." Dkt. No. 40-3 at 5. Although Pili does not rely upon the case, the Court, thus, finds Anderson's situation different than *Booth*. In *Booth*, a prisoner sought monetary compensation, even though the prison's administrative system offered no such relief, and then abandoned his grievance after the first step. *Booth*, 532 U.S. at 734-735. The Supreme Court held that the PLRA requires exhaustion "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Id*. at 739. While the *Booth* prisoner failed to fully pursue administrative remedies that did not provide for monetary compensation, there is no suggestion (unlike here) that the prisoner was informed that he could no longer pursue his remedies by appealing. Instead, it appears that the prisoner simply stopped pursuing his remedies after the first step. *See id*. at 734-735.

[6]Pili's reply does not change this finding. In his reply, Pili largely focuses upon an argument Anderson makes in his response that, during the grievance process, he was threatened by a prison official. *See* Dkt. No. 52 at 2-4; *see also* Dkt. No. 51 at 3. A threat to a prisoner can be a reason justifying the failure to exhaust available administrative remedies. *Ross*, 136 S.Ct. at 1860. Here, though, whether or not Anderson was threatened and, if so, whether that threat was sufficient to excuse a lack of exhaustion is irrelevant because the Court has not found that Anderson failed to exhaust his available administrative remedies. Instead, the Court has found that *Defendant has not shown* that Anderson failed to exhaust his available administrative remedies. Thus, the burden of production described in *Albino* never shifted to Anderson. In his reply, Pili also appears to assert that, in the resolution of Grievance 413512, Anderson was told to re-submit the same and he failed to do so. *See* Dkt. No. 52 at 4. To the extent this brief assertion, made for the first time in reply, can be considered, it too does not change the Court's

# CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment, Dkt. No. 39.

IT IS SO ORDERED.

DATED: June 28, 2019 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

---

analysis, given the clear statement in the Return Notice that the subject of Grievance 413512 was not allowed by policy and could not be appealed.