IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‛I

| | |
|---|---|
| VERNARD DIONNE ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>D. PILI,<br><br>Defendant. | Case No. 18-cv-00260-DKW-RT<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

# INTRODUCTION

Defendant Darrell Pili moves for summary judgment on Plaintiff Vernard Dionne Anderson's sole remaining claim of excessive force in violation of the Eighth Amendment. Defendant moves on two grounds: first, the lack of an Eighth Amendment violation; and, second, his entitlement to qualified immunity. Defendant bases both of those arguments, however, on his own version of events. While that version may be true, it is not the version of events that Plaintiff provides. Based upon Plaintiff's version, which also may be true, a jury could reasonably believe that both an Eighth Amendment violation took place and Defendant is not entitled to qualified immunity. Therefore, the motion for summary judgment is DENIED, as set forth herein.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party bears the burden of proof, he "must come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). This means, therefore, that the moving party "bears the initial burden of establishing the absence of a genuine issue of fact on each issue material to his affirmative defense." *Id*. at 1537. In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## FACTUAL BACKGROUND

The Court evaluates the relevant factual background from the parties' concise statements of fact and evidence filed in connection therewith in the light most favorable to Plaintiff, the non-moving party.

Anderson was incarcerated at Oahu Community Correctional Center (OCCC) in December 2017.  Decl. of Vernard Anderson at ¶ 2, Dkt. No. 103-7.  At that time, Anderson arrived at a medical intake appointment in a wheelchair and had a boot on his left foot and a wired jaw.  *Id.* at ¶ 3; 12/21/17 Intake Record at 1, 3, Dkt. No. 103-4.  Anderson was transferred to OCCC's Module 2 with a "no top bunk" medical recommendation.  12/21/17 Intake Record at 1; 12/21/17 Medical Needs Memo, Dkt. No. 103-3.  On or about February 28, 2018, Anderson was still recovering from the pre-existing injury to his left foot and was scheduled for removal of the "hardware" associated with his wired jaw.  Anderson Decl. at ¶ 6; 2/16/18 Provider Progress Note, Dkt. No. 107-2 at 2.  Anderson walked with a limp for short distances and used a wheelchair for long distances.  Anderson Decl. at ¶ 7.

At some point in February 2018, Pili and another Adult Corrections Officer (ACO) were conducting a "beginning of shift" head count of Module 2.[1]  During the head count, Pili passed Anderson in his cell.  Anderson Decl. at ¶ 10.  Pili noticed that Anderson was washing laundry in a prison cell trash can and the trash can had been modified with a handle made from a torn bed sheet.  Pili Decl. at

---

[1]The parties appear to dispute both (1) whether the events took place on February 20 or February 28, 2018, and (2) the identity of the other ACO.  *See* Decl. of Darrell Pili at ¶ 4, Dkt. No. 61-1; Anderson Decl. at ¶ 8.

¶¶ 5-6. It is a violation of OCCC policy for an inmate to hand wash any clothing in his cell. *Id*. at ¶ 7.[2] Pili looked into Anderson's cell and asked him what he was doing. Anderson Decl. at ¶ 11. Anderson responded that he was washing his medical boot sock. *Id*. at ¶ 12. After Anderson's response, Pili continued with the head count. *Id*. at ¶ 14. When the head count was complete, Pili, alone, returned to Anderson's cell. *Id*. at ¶ 15. Pili opened the cell door, started swearing at Anderson, and asked him to turn over the trash can. *Id*. at ¶¶ 16-17. Anderson handed the trash can to Pili and then started washing his sock in the sink in his cell. *Id*. at ¶¶ 18-19. Pili left the cell, threw the trash can, and then returned to the cell. *Id*. at ¶¶ 20-21. As Pili returned to the cell, Anderson continued to wash his sock in the sink using both of his hands. *Id*. at ¶ 22. Pili yelled at Anderson, pushed him over the sink, and hit Anderson in the mouth. *Id*. at ¶ 23. Anderson attempted to restrain Pili and, in doing so, Pili stomped on Anderson's foot, hit his mouth, and bit Anderson's finger. *Id*. at ¶ 24.

---

[2] Pili asserts that it is also a violation of OCCC policy to use facility equipment for exercise in a cell. Pili Decl. at ¶ 7. However, there is no evidence that Anderson was using facility equipment, like the trash can, for exercise. Rather, both parties appear to agree that the trash can was being used to wash Anderson's sock, which, when viewed in Anderson's favor, the Court does not construe as exercise.

At some point, another ACO came to Anderson's cell.  7/26/19 Depo. of Vernard Dionne Anderson at 94:13-23, Dkt. No. 103-2.[3]  At some later point, Anderson then walked "freely" to medical without handcuffs, but limping in his cast.[4]  Anderson was seen at the medical unit by Registered Nurse Lynn Kunishige.  7/30/19 Decl. of Lynn Kunishige at ¶ 3, Dkt. No. 61-2.  Anderson indicated to Kunishige that his pain was mild, with cuts to his left upper lip and left ring finger.  *Id*. at ¶ 5.  Anderson was able to open his mouth without difficulty and had no loose teeth.  The cut to Anderson's left ring finger was treated with antibiotic ointment and a band-aid, while his upper lip was left "as is."  *Id*.  Kunishige observed that Anderson did not appear in acute distress, was able to bear weight on his left foot, and walked with a steady gait.  *Id*. at ¶ 6.  Kunishige also saw Pili at the medical unit.  *Id*. at ¶ 8.  Pili presented with a superficial abrasion to his left cheek and two superficial cuts to his right ring finger.  Pili was able to open and close his mouth without difficulty, and he had intact range of motion in his right ring finger.  *Id*.  On March 2, 2018, Anderson visited Dr.

---

[3]The record does not clearly reflect when another ACO came to Anderson's cell.  Pili asserts that it occurred after his struggle with Anderson concluded and Anderson was handcuffed.  Pili Decl. at ¶¶ 13-14.  Anderson, however, disputes that he was ever handcuffed due to the struggle, but fails to state with any specificity when the other ACO arrived.  Anderson Depo. at 11-23.
[4]Again, it is not clear from the record when this took place.  Anderson testified that he was not "immediately" taken from his cell.  Anderson Depo. at 94:3-10.  Pili asserts that ACO Tausaga took Anderson to medical after he was handcuffed.  Pili Decl. at ¶ 14.

Richard Banner, with the doctor observing that no healing was evident in Anderson's left foot, but Anderson was able to bear weight on his heel with minimal discomfort. 3/2/18 Provider Progress Note, Dkt. No. 107-2 at 1.

## **RELEVANT PROCEDURAL BACKGROUND**

On July 30, 2019, Pili moved for summary judgment on Anderson's Eighth Amendment claim of excessive force, asserting, *inter alia*, the defense of qualified immunity. Dkt. No. 60. Because Anderson had previously filed a motion for appointment of counsel, the Court held in abeyance briefing on the motion for summary judgment. Dkt. No. 63. On August 9, 2019, the assigned Magistrate Judge referred this case to the civil pro bono panel for the purpose of seeking counsel to represent Anderson. Dkt. No. 65. On December 19, 2019, counsel from the civil pro bono panel was appointed to represent Anderson for the limited purpose of representing him in responding to the motion for summary judgment and in conducting settlement discussions. Dkt No. 90.

On March 13, 2020, Anderson filed a memorandum in opposition to the motion for summary judgment. Dkt. No. 102. Thereafter, Pili filed a reply in support of the motion for summary judgment, Dkt. No. 107, and, due to the Covid-19 emergency, and with the parties' concurrence, the Court elected to decide the

motion for summary judgment without a hearing, Dkt. No. 109. This Order now follows.

## RELEVANT LEGAL PRINCIPLES

1. **Eighth Amendment**

Generally speaking, "the settled rule [is] that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quotation, internal quotation, and ellipsis omitted). When prison officials maliciously and sadistically use force to cause harm, "contemporary standards of decency always are violated whether or not significant injury is evident." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation and ellipsis omitted). When it is alleged that a prison official used excessive force in violation of the Eighth Amendment, "the core judicial inquiry" is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6-7. Five factors are relevant in determining that inquiry: "(1) the extent of the injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to

temper the severity of a forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (quotation omitted).

2. **Qualified Immunity**

A two-step analysis is used when assessing the defense of qualified immunity. *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017). At the summary judgment stage, a court asks whether the "contours" of the "Eighth Amendment right were clearly established with respect to the alleged misconduct[,]" and whether, when taken in the light most favorable to the non-moving party, "do the facts alleged show the officer's conduct violated a constitutional right?" *Furnace*, 705 F.3d at 1026. A court has discretion to determine the sequence of this analysis. *Id.* at 1026 n.3. In addition, "[q]ualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Frudden*, 877 F.3d at 831.

## DISCUSSION

The Court elects to begin its analysis with whether a constitutional right has been violated and then, if necessary, whether that right was clearly established.

1. **Eighth Amendment Violation**

The Court assesses each of the five factors identified in *Hudson* in turn. First, the evidence in the record before the Court at this stage in the proceedings

reflects, at most, minimal injury to Anderson resulting from the incident with Pili. In fact, that is entirely what Kunishige's declaration provides: "Anderson indicated that his pain was mild." She also states that Anderson had a cut to his left upper lip and his left ring finger. That is the extent of Anderson's injuries, at least as reflected in the evidence before the Court. While Anderson asserts in his concise statement of facts that his foot and jaw injuries were "prolonged" by the incident with Pili, other than his own statements in that regard, he provides no evidence, and certainly no *medical* evidence, to substantiate the same. As a result, the Court finds this factor weighs in favor of Pili. That being said, as the Supreme Court has explained, an Eighth Amendment violation can occur even without a severe injury to an inmate. *Wilkins*, 559 U.S. at 37. Therefore, this Court continues with the other *Hudson* factors.

As an initial matter, the remaining factors are largely influenced by the version of events each side presents. By Pili's account, he asked Anderson to empty the trash can and place it near the cell door. When Pili returned to the cell, Anderson had not complied. As a result, Pili opened the cell door to retrieve the trash can, and as he did so, Anderson struck him on the left side of his face. Pili then claims he threw the trash can toward the cell door, attempted to restrain Anderson who continued to refuse to comply and kept fighting, and eventually lost

9

his balance during the struggle, falling on his left side onto the edge of the bottom bunk. Pili further claims that Anderson then landed on him and pushed Pili's face back. When Pili could not force Anderson off of him, Pili made a last gasp effort to bite down on Anderson's finger, which finally caused Anderson to release pressure and allowed Pili to push Anderson to the side and restrain him with handcuffs. Pili Decl. at ¶¶ 8-13. That is a very different version of events, however, than the one set forth above in the Factual Background, which is viewed in the light most favorable to Anderson. Notably, Anderson's account omits any mention of Anderson striking Pili in the face and, in fact, describes Pili as throwing the first blow. At this juncture, with only a paper record before it, this Court cannot decide who between Anderson and Pili is more believable. Instead, all the Court can do is find that there is a fundamental dispute about what happened between the two and why, and accept the truth of Anderson's version as the non-moving party. *See Furnace*, 705 F.3d at 1026 ("If, as to any given material fact, evidence produced by the moving party (the officers, in this case) conflicts with evidence produced by the nonmoving party ([Anderson], in this case), we must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact."). When the Court does so, the remaining four *Hudson* factors all fall in favor of Anderson.

The second factor is the need for the application of force. Based upon Anderson's version of events, there was *no* need for Pili to apply force. Specifically, according to Anderson, Pili returned to the cell, opened the door, started swearing at Anderson, asked Anderson to hand over the trash can, Anderson did so, Pili threw the can out of the cell, Anderson continued to clean his sock in a sink, Pili yelled at Anderson, pushed Anderson over the sink, and then hit him in the mouth. Apart from the fact that, based on this version, there was no need for Pili to even open the cell door, thereby creating the possibility for physical interaction between Pili and Anderson, even with the door open, there was simply no need for Pili to hit Anderson, given that, *inter alia*, he never asked Anderson to stop washing the sock in the sink. Put simply, based upon Anderson's account, this is not a situation where Anderson had done anything that required the use of force to stop Anderson from acting. Instead, Pili created a situation, by opening the cell door and returning to the cell after throwing the trash can, where the use of force became possible and then used force without any attempt to use a non-force option to resolve the situation. In that light, the second factor weighs in favor of Anderson.

The third factor is the relationship between the need for force and the amount of force used. Here, as just discussed, based upon Anderson's account,

11

there was no need for force. As such, *no* amount of force was necessary to resolve the situation, at least not prior to Pili attempting to use non-force options to do so. Therefore, because Pili did use force, hitting Anderson in the face, that force was disproportionate to the need of the situation, and this factor weighs in favor of Anderson.

The fourth factor is the threat reasonably perceived by Pili. Here, based upon Anderson's version of events, there was no *threat* that could reasonably be perceived from Anderson washing his sock either in the trash can or the sink. While the evidence reflects that hand washing clothes in a cell is against OCCC policy, that alone does not mean that a *threat* existed or could reasonably be perceived from violating the policy. Therefore, this factor weighs in favor of Anderson.

The final factor is whether any efforts were made to temper the severity of a forceful response. Here, based upon Anderson's version of events, *no* temperance can be construed from Pili's response. At best under Anderson's account, prior to acting forcefully, Pili asked for the trash can to be handed over to him. Anderson complied with this request, and, after throwing the can away, Pili then yelled at Anderson and acted forcefully by hitting Anderson in the face. Construing these assertions from Anderson in the light most favorable to him, it cannot be said that

12

Pili's forceful acts were tempered.  Therefore, this factor weighs in favor of Anderson.

In summary, based upon Anderson's version of events and the medical evidence in the record, four of the five factors weigh in favor of Anderson and one factor, the first, weighs in favor of Pili.  Because an Eighth Amendment violation can occur irrespective of significant injury and because the malicious and sadistic use of force always violates the Eighth Amendment, the Court finds that there is a genuine dispute of fact with respect to whether Anderson's Eighth Amendment right was violated.[5]

### 2.  **Clearly Established Right**

As in *Furnace*, the constitutional analysis here "relies primarily on whether the force used by officers caused unnecessary and wanton pain and suffering, as defined in *Hudson*, since that law was undoubtedly clear."  705 F.3d at 1028.

As discussed above, based upon Anderson's version of events, there is a genuine issue of fact as to whether Pili violated Anderson's Eighth Amendment

---

[5]Pili's arguments to the contrary entirely miss the mark because at no point does Pili frame his argument in the context of Anderson's version of events.  Notably, although Pili acknowledges that a non-moving party can create a genuine issue of fact by setting forth facts in an affidavit or declaration, *see* Dkt. No. 60 at 7, and Anderson does so in the declaration attached to his opposition, in his reply, Pili continues to "review[] the remaining four factors" under the light of his own version of events, *see* Dkt. No. 107 at 6.

right to be free from unnecessary and wanton pain and suffering, as defined in *Hudson*. In addition, because the "contours" of that right were clearly established, *see id.*, Pili has failed to carry his burden of showing that he is entitled to qualified immunity at this stage in the proceedings.[6]

As a result, the motion for summary judgment is denied.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment, Dkt. No. 60.

IT IS SO ORDERED.

DATED: May 12, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

<u>*Vernard Dionne Anderson vs. D. Pili;*</u> Civil No. 18-00260 DKW-RT; **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

[6]Again, Pili's limited contentions to the contrary miss the mark, as they too are premised entirely upon his own version of events. *See* Dkt. No. 60 at 9-11. In addition, no mention of qualified immunity is made in Pili's reply. *See generally* Dkt. No. 107.